FILED'11 FEB 24 12:48USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HOLLY M. BUTLER,                                Civil No. 09-1378-AA
                                                 OPINION AND ORDER
        Plaintiff,

    vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
_____

David B. Lowry
Attorney At Law
9900 SW Greenburg Road
Columbia Business Center, Suite 130
Portland, Oregon 97223
    Attorney for plaintiff

Dwight Holton
United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204

Thomas M. Elsberry
Special Assistant U.S. Attorney
Office of General Counsel
Social Security Administration

PAGE 1 - OPINION AND ORDER

701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
     Attorneys for defendant

AIKEN, Chief Judge:

Claimant, Holly Butler, brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's applications for Title II disability insurance benefits (DIB) and Title XVI supplemental security income (SSI) disability benefits under the Act. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On August 24, 2005, plaintiff protectively filed applications for both DIB and SSI. Tr. 60. After the applications were denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge (ALJ). Tr. 88-96. On February 20, 2008, an ALJ hearing was held before the Honorable Riley J. Atkins. Tr. 564-93. On May 29, 2008, ALJ Atkins issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 60-71. After the Appeals Council declined to review the ALJ decision on September 25, 2009, plaintiff filed a complaint in this Court. Tr. 4-6.

## STATEMENT OF THE FACTS

Born in 1956, plaintiff was 49 years old on the alleged onset date of disability, and 51 years old at the time of the hearing. Tr. 70. Plaintiff graduated from high school and

PAGE 2 - OPINION AND ORDER

attended some college, but did not earn a degree. Tr. 570. Plaintiff has past relevant work experience as a courtesy clerk, deli assistant, and call center operator. Tr. 571-2. She alleges disability beginning August 16, 2005 due to interstitial cystitis, irritable bowel syndrome, history of a seizure disorder, and a personality disorder. Tr. 62. In addition, plaintiff alleges an inability to work due to pain, fatigue, memory and concentration issues attributable to somatization disorder, and depression. Tr. 573-80.

A vocational expert (VE) testified at the hearing. The VE opined that there were light to medium exertion jobs available in the local economy which plaintiff could perform. Tr. 589-92. When asked if missing four or more days of work per month would change her answer, the VE responded that these absences would preclude plaintiff's sustained employment. Tr. 592.

## STANDARD OF REVIEW

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." Martinez v. Heckler,

PAGE 3 - OPINION AND ORDER

807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively

PAGE 4 - OPINION AND ORDER

presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 62, Finding 2. This finding is not in dispute. At step two, the ALJ found that plaintiff had the following severe impairments: interstitial cystitis, irritable bowel syndrome, history of seizure disorder, and personality disorder. Tr. 62, Finding 3. This finding is in dispute. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 64, Finding 4. This finding is in dispute.

The ALJ determined that plaintiff had the residual

PAGE 5 - OPINION AND ORDER

functional capacity (RFC) to perform work at the light to medium exertion level. Tr. 65, Finding 5. Plaintiff was limited to work that would allow close access to the bathroom and did not involve concentrated exposure to heights or hazardous machinery. Tr. 65-6. Plaintiff was also restricted to work that involved no more than occasional public contact. Tr. 66. This finding is in dispute.

At step four, the ALJ decided that plaintiff was unable to perform her past relevant work. Tr. 69, Finding 6. This finding is not in dispute. Finally, at step five, the ALJ found that there are jobs that exist in significant numbers in the national and local economy that plaintiff could perform. Tr. 70, Finding 10. This finding is in dispute.

I. Opinions of Treating and Consulting Physicians

Plaintiff asserts that the ALJ erred by providing legally insufficient reasons for rejecting the opinions of treating physician, Michael Leigh Rowan-Kelly, M.D., and consulting physician, Neal Rendleman, M.D. Pl.'s Br. at. 10-14.

There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is controlling when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other evidence of record. 20 C.F.R. § 404.1527(d)(2). When the treating physician's opinion is uncontroverted, the ALJ must give

PAGE 6 - OPINION AND ORDER

"clear and convincing reasons" before rejecting the opinion. Lester, 81 F.3d at 830. When the treating physician's opinion is disputed, the ALJ must give "specific and legitimate reasons" before rejecting the opinion. Id.

    A.  Dr. Rowan-Kelly

Plaintiff argues that the ALJ's finding that Dr. Rowan-Kelly's opinion lacked references to objective medical findings was not a valid reason for rejecting his opinion. Pl.'s Br. at 11; Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007).

Dr. Rowan-Kelly was plaintiff's treating physician for part of 2007. It is undisputed that Dr. Rowan-Kelly's opinion is inconsistent with nearly every other treating, examining, or non-examining physician. Thus, the question is whether the ALJ set forth specific and legitimate reasons for giving little weight to Dr. Rowan-Kelly's opinion. Lester, 81 F.3d at 830.

Before looking into the ALJ's reasons for rejecting the opinion, a preliminary matter must be addressed. During the ALJ hearing, there was confusion as to whether Dr. Rowan-Kelly was, in fact, a doctor. Tr. 68. Because Dr. Rowan-Kelly signed the report "Rowan-Kelly, Leigh," without an M.D. after his name, the ALJ assumed that he "worked in the doctor's office." Id. Although the ALJ improperly concluded that there was no information provided as to the role of Dr. Rowan-Kelly, I find that the error was harmless because the ALJ evaluated the opinion according to the standards for a treating physician, providing specific and legitimate reasons for rejecting it. Stout v.

PAGE 7 - OPINION AND ORDER

Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless error).

Dr. Rowan-Kelly saw plaintiff approximately six times, and listed plaintiff's diagnosis as "progressive deterioration." Tr. 307. Further, Dr. Kelly-Rowan opined that plaintiff had a very limited RFC, stating that plaintiff was in "constant pain and excretory function requirements are grossly disruptive." Tr. 312. Finally, Dr. Rowan-Kelly opined that plaintiff would need to miss work "more than four times a month" due to her medical impairments. Id.

While plaintiff may be correct that a lack of reference to objective medical findings is not a valid reason for rejecting a treating physician's opinion, I find that the ALJ gave additional reasons. A physician's opinion can be properly rejected when the ALJ finds that it was in the form of a checklist, lacks supporting objective evidence, was contradicted by other statements on the record, and was based on subjective descriptions. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

Here, the ALJ rejected Dr. Rowan-Kelly's opinion because he used a "check-the-box" form that failed to set out any objective findings, only stating that his report was based on "objective assessment, plaintiff's subjective report." Tr. 68. The ALJ found that not only did Dr. Rowan-Kelly fail to provide any specific, objective findings in this report, but further, that

PAGE 8 - OPINION AND ORDER

his "response did not distinguish how much of the answer was merely based on subjective complaints." Id. The ALJ also noted that plaintiff worked for years with the same impairments that she now alleges qualify her as disabled, and that there was no evidence in the record, other than Dr. Rowan-Kelly's report, that any of plaintiff's impairments had deteriorated over time. Tr. 68-9. Thus, the ALJ found that Dr. Rowan-Kelly's report merited little weight because it was in the form of a checklist, lacked supporting objective evidence, was contradicted by other statements on the record, and was based on subjective descriptions. Batson, 359 F.3d at 1195. Therefore, I find that the ALJ set forth sufficient specific and legitimate reasons for rejecting the opinion of Dr. Rowan-Kelly.

B. Dr. Rendleman

Plaintiff next contends that the ALJ erred by rejecting Dr. Rendleman's opinion about plaintiff's need for a sheltered workshop and accommodations due to the need for frequent restroom trips. Pl.'s Br. at 13. In February 2006, Dr. Rendleman conducted a one-time "work capacity evaluation" on behalf of the Oregon Department of Human Services. Tr. 290. Dr. Rendleman opined that "any program that would get [plaintiff] into the workforce would obviously require a sheltered workshop and extensive accommodation for frequent trips to the bathroom and missed days of work." Tr. 292.

Within the same report, however, Dr. Rendleman also stated that plaintiff exhibited "gain-seeking behavior" and had the

PAGE 9 - OPINION AND ORDER

mental status of someone who "has totally dedicated herself to her illness." Tr. 291-2. Dr. Rendleman further opined that "review of criteria for disability does not indicate anything physiologic as it relates to digestion, urine, or neurological disorder that would be even worth pursuing further, as regards to work capacity," and that plaintiff "has the potential to be productive." Tr. 292. Because Dr. Rendleman found nothing physical that would cause plaintiff to need to use the bathroom as frequently as she suggests, his assessment of plaintiff's need for accommodations was based on her subjective reports.

A physician's work restrictions based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than credible. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). Here, the ALJ found that plaintiff exhibited gain-seeking behavior. Tr. 67. Plaintiff has been attempting to get disability benefits and Family Medical Leave Act (FMLA) leave since 1994. Tr. 521-30. Disability benefits have consistently been denied. Tr. 531-4.

In addition, in approximately 2001, plaintiff began requesting FMLA work-release forms. Plaintiff's treating physician at the time, Dr. Vinson, stated that he was concerned with plaintiff's open ended request for medical leave, stating that plaintiff had frequently expressed a dislike for work in general and he worried that leave would open the door to permanent disability. Tr. 67, 450. Dr. Vinson further opined

PAGE 10 - OPINION AND ORDER

that, "I do not feel that her chronic medical condition are [sic] in any way incapacitating or that taking medications would necessarily prevent her from fulfilling her work duties." Tr. 423.

When Dr. Vinson repeatedly refused to sign plaintiff's work-release forms, she approached one of his colleagues for a signature. Tr. 415. Plaintiff also requested work-release forms from Dr. Chamie (Tr. 316), Dr. Rosenberg (Tr. 340), Dr. Wilson (Tr. 376), Dr. Moos (Tr. 390-1), and Dr. Corbett (Tr. 399, 404). These doctors all refused to sign extended work-release forms because all believed that plaintiff's medical conditions did not impair her ability to work. Based on this evidence, the ALJ concluded that plaintiff "simply appears to be focused on obtaining disability benefits as a means of avoiding a return to work." Tr. 67. Accordingly, the ALJ rejected Dr. Rendleman's opinion based on plaintiff's lack of credibility and inconsistencies in the report concerning the effect of plaintiff's impairment.

I find ample evidence in the record supporting the finding that plaintiff is not credible. I also find that Dr. Rendleman's report is not internally consistent. Further, Dr. Rendleman's opinion, even if accepted as true, does not support findings of greater functional limitations than those already addressed by the ALJ. Therefore, as to plaintiff's claims regarding Dr. Rowan-Kelly and Dr. Rendleman, I find that the ALJ adequately considered and properly rejected or accepted all relevant medical

PAGE 11 - OPINION AND ORDER

evidence. Accordingly, I find no basis to overturn the ALJ's decision and find that the decision is based on proper legal standards and that the findings are supported by substantial evidence in the record.

II. Residual Functional Capacity Determination

Plaintiff also contends that the ALJ failed to accommodate the full range of her limitations in her RFC. Pl.'s Br. at 14-17. Specifically, plaintiff argues that the ALJ did not assess Dr. Sacks' diagnoses of somatization disorder and pain disorder, the impact of plaintiff's interstitial cystitis, or the side effects of her medications on her ability to perform work activity.

In assessing the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe. SSR 96-8p. Further, the ALJ is required to consider all medical opinions and assess the weight to be afforded each opinion. 20 C.F.R §§ 404.1527, 416.927. However, the RFC need only incorporate limitations found on the record. Osenbrock v. Apfel, 240 F.3d 1157, 1164-5 (9th Cir. 2001) (restrictions not supported by substantial evidence may be freely accepted or rejected by ALJ).

Here, the ALJ found that plaintiff has the residual functional capacity to perform "light to medium work" with the following limitations: close access to a bathroom, no concentrated exposure to heights or hazardous machinery, and only occasional public contact. Tr. 65-6. Based on the record, the

PAGE 12 - OPINION AND ORDER

ALJ found that plaintiff's impairments could reasonably be expected to produce the alleged symptoms. Tr. 66. However, the ALJ also found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC. Id.

### A. Plaintiff's Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ may reject [her] testimony regarding the severity of symptoms only if he makes specific findings stating clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996)(internal quotation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002). A general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

Here, the ALJ determined that plaintiff's testimony "suggested that she performed at a higher exertional level than perhaps she recognized." Tr. 67. Plaintiff testified that she cooked for her disabled significant other and helped him with

PAGE 13 - OPINION AND ORDER

showering and dressing. Tr. 584. The ALJ found that this evidence directly contradicted plaintiff's contentions about how debilitating her pain and other limitations were. Id. Accordingly, the ALJ found that these non-work activities "reveal a rather full ability to perform at the light to medium level of exertion." Id. Moreover, the ALJ noted that plaintiff's role as caregiver provided additional incentive for her not to return to work and to seek disability benefits. Id. Thus, because plaintiff's level of activity is inconsistent with the degree of impairment that she alleges, the ALJ found plaintiff's testimony about the severity of her limitations not credible. Id.

The ALJ pointed to specific evidence in the record that undermines plaintiff's claims that her impairments were so great that she was unable to work. Therefore, I find that the ALJ provided clear and convincing reasons to reject plaintiff's subjective testimony regarding the extent of her limitations.

 B. <u>Failure to Accommodate Plaintiff's Limitations in the Residual Function Capacity</u>

Plaintiff makes several arguments outlining the ways in which the RFC failed to capture all of her limitations.

 I. <u>Dr. Sacks' Diagnoses</u>

First, plaintiff argues that the ALJ erred by failing to address Dr. Sacks' opinion regarding her somatization and pain disorders. Further, plaintiff asserts that the ALJ erred by finding that these disorders were not "severe."

Contrary to plaintiff's assertions, however, the ALJ did

PAGE 14 - OPINION AND ORDER

address Dr. Sacks' opinion. Tr. 61. In 2006, Dr. Sacks performed a consultive exam on plaintiff and diagnosed her with depression, somatization disorder, and pain disorder. Tr. 289. However, in his report, he did not discuss whether or how these diagnoses would result in limitation on plaintiff's ability to perform work-related activities. Dr. Sacks did find that plaintiff "complained of cognitive difficulties in excess of observed impairment." Tr. 286.

A state agency psychologist, Dr. Anderson, evaluated the workplace limitations established by Dr. Sacks' report. Tr. 61. Dr. Anderson opined that while plaintiff did have mild limitations, these limitations were not "severe." Tr. 303, 305. Based in Dr. Sacks' report, Dr. Anderson did not recommend any work restrictions. Tr. 305. Further, Dr. Anderson noted that plaintiff engaged in several normal daily activities that contradicted her claims of disability. Id. Therefore, the record shows that the ALJ accepted Dr. Sacks diagnoses, but did not find that they resulted in work-activity restrictions, especially since there was evidence of "purposeful embellishment for secondary gain." Id.

Based on the record, I find that the ALJ properly considered and weighed all of the relevant medical evidence, and did not err by finding that plaintiff's somatization disorder and pain disorder were not "severe." Further, I find that to the extent that these disorders impair plaintiff, they do not result in additional restrictions in the RFC.

PAGE 15 - OPINION AND ORDER

### ii. Plaintiff's Interstitial Cystitis

Second, plaintiff argues that the RFC is legally deficient because the ALJ failed to assess the impact of interstitial cystitis on plaintiff's ability to perform sustained work activity. However, at step 2, the ALJ concluded that the plaintiff's interstitial cystitis was a severe impairment, and the RFC includes a physical limitation to account for this impairment. Plaintiff does not detail what other physical limitations follow from interstitial cystitis, besides the limitations already listed in the RFC. Plaintiff testified merely that she "could [need to go to the bathroom] once an hour," but that she never had accidents and was in good control of her functions. Tr. 580. Thus, from the record and plaintiff's own testimony, I find that the RFC, which does reflect plaintiff's need for "close access to the bathroom," is legally sufficient.

### iii. Medication Side-Effects

Third, plaintiff asserts that the RFC failed to accommodate for the side-effects of her medications. The ALJ must consider all factors that might have a "significant impact on an individual's ability to work," including the side-effects from medications. Erickson v. Shalala, 9 F.3d 813, 818 (9th Cir. 1993). Plaintiff argues that the ALJ ignored the "uncontroverted testimony that plaintiff suffers from drowsiness from medications." Pl. Br. at 17. However, as discussed above, plaintiff's subjective testimony about the effects of her

PAGE 16 - OPINION AND ORDER

medication were found to be not credible by the ALJ, and were accordingly properly rejected. Therefore, I find that plaintiff's allegations that the ALJ erred because the RFC failed to reflect impairments due to medication side-effects must fail.

    iv. <u>Failure to Incorporate Limitations Identified by Other Doctors</u>

Fourth, plaintiff alleges that the ALJ erred by failing to incorporate the limitations identified by Dr. Rowan-Kelly and Dr. Rendleman. However, as discussed above, the ALJ properly rejected this evidence.

Therefore, I find that the ALJ's RFC determination is supported by substantial evidence. In addition, I find that the ALJ properly considered and assessed all of the medical evidence and plaintiff's limitations, as mandated by SSR 96-8. Accordingly, I find that the ALJ's step 5 findings are supported by substantial evidence and free of legal error.

### CONCLUSION

The Commissioner's decision is based on substantial evidence, and is therefore, affirmed. This case is dismissed. IT IS SO ORDERED.

Dated this 22 day of February 2011.

_____
Ann Aiken
United States District Judge